**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Moreno Gamez, | No. CV-14-01193-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Carlos Moreno Gamez seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   BACKGROUND**

Plaintiff was born in March 1962 and has a ninth grade education. He is able to communicate in English. He worked primarily as a plastering supervisor during the fifteen years before April 2011. Although he has multiple medical conditions, his primary complaints are chronic right knee pain, type 2 diabetes with mild peripheral neuropathy, and pain in his back, head, hands, and fingers.

In May 2011, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning April 1, 2011. On January 9, 2013, he appeared with his attorney and testified at a hearing before the ALJ with an interpreter. A vocational expert also testified. On March 7, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On May 30, 2014, Plaintiff sought review by this Court.

## II.   STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

## III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears

the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2012, and that he has not engaged in substantial gainful activity since April 1, 2011. At step two, the ALJ found that Plaintiff has the following severe impairments: asthma, gastroesophageal reflux disease, diabetes mellitus, right knee pain status post arthroscopy, sleep apnea, peripheral neuropathy, sensorineural hearing loss, and lower back spondylolisthesis. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the ability to occasionally perform postural activities such as climbing ramps and stairs and kneeling and crouch[ing], but must avoid climbing ladders, ropes or scaffolds, exposure to dusts, gases, and chemical irritants, and excessive background noise.

The ALJ further found that Plaintiff is unable to perform any past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* at 830; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record).

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631. The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The opinion of any physician, including that of a treating physician, need not be accepted "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). An ALJ may reject standardized, check-the-box forms that do not contain any explanation of the bases for conclusions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Generally, more weight should be given to the opinion of a treating physician than to the opinions of physicians who do not treat the claimant, and the weight afforded a non-examining physician's opinion depends on the extent to which he provides

supporting explanations for his opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

### 2. Examining Physician Elizabeth Ottney, D.O.

Defendant alleges disability beginning April 1, 2011. On August 9, 2011, Dr. Ottney examined Plaintiff and provided a written assessment. Dr. Ottney reported that Plaintiff's chief complaints were chronic right knee pain and type 2 diabetes. For typical daily activities, Dr. Ottney wrote, "The claimant walks." Under the heading "review of systems," she wrote, "The claimant reports weight loss, fatigue, fainting spells, dizziness, frequent falls, headaches, shortness of breath, and racing heart." There is no mention Plaintiff reported lower extremity numbness or pain except for right knee pain.

Upon testing, Dr. Ottney found Plaintiff's muscle strength of the upper and lower extremities and grip strength to be 5/5 bilaterally. She found Plaintiff's balance and coordination to be normal. She observed that Plaintiff demonstrated "a normal stance and fine and gross motor function of the upper extremities bilaterally while manipulating his shoes and wallet." She observed that Plaintiff used a cane for walking but also could walk without a cane, moved on and off the examination table without assistance, and was able to rise from a seated position. Dr. Ottney found normal range of motion of all the major joints, but reported Plaintiff had pain with full flexion of the right knee.

Dr. Ottney also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). Although she did not respond to the question asking for her diagnosis, she stated, "The following limitations are secondary to his chronic right knee pain." She opined that Plaintiff's maximum capacity to lift and/or carry is 20 pounds occasionally and 10 pounds frequently. She opined that he had no limitations in sitting. She opined that Plaintiff's ability to stand and/or walk is four hours in an eight-hour day. For each of these opinions, she did not respond to the follow-up question asking her to identify the findings on which she based her conclusion. She stated that Plaintiff used a cane and appeared to need it for pain, but not for balance.

In his reply brief, Plaintiff contends that "[a] closer look at the report from Dr. Ottney finds the doctor seeing lessening of lower extremity senses and restrictions in lower extremity capacity (TR 319)." Close scrutiny of Dr. Ottney's report yields no such finding. Dr. Ottney expressly found limitations based solely on Plaintiff's reported right knee pain. Nothing in the report suggests that Dr. Ottney was aware that Plaintiff had any complaints of painful feet and numbness.

### 3. Treating Neurologist Victor Salazar-Calderon, M.D.

The record includes Dr. Salazar-Calderon's treatment notes from June 28, 2011, through November 19, 2012. On June 28, 2011, Dr. Salazar-Calderon described Plaintiff as "a diabetic patient with painful feet and numbness suggestive of diabetic sensory peripheral neuropathy." He opined that the numbness in Plaintiff's "left big toe is due to a local sensory neuropathy probably [due] to wearing tight shoes." His treatment plan included prescribing gabapentin and vitamin B6 and conducting nerve conduction velocity testing. His notes show Plaintiff was to follow up within one month, but Dr. Salazar-Calderon did not see him again until September 28, 2011. Dr. Salazar-Calderon conducted nerve conduction velocity testing, which showed "well controlled diabetic polyneuropathy." Dr. Salazar-Calderon reported that Plaintiff was doing well.

On October 27, 2011, Dr. Salazar-Calderon noted that Plaintiff was doing well on his medications and the results of physical and neurological examinations were unchanged. Dr. Salazar-Calderon's assessment was "well controlled painful diabetic peripheral neuropathy." On November 29, 2011, Dr. Salazar-Calderon again noted that Plaintiff was doing well on his medications and the results of physical and neurological examinations were unchanged. He also noted that Plaintiff "occasionally" gets numbness in his toes and has chronic neck and low back pain. Dr. Salazar-Calderon's assessment was "well controlled painful diabetic peripheral neuropathy in a patient with chronic neck and low back pain secondary to degenerative disc disease."

On February 29, 2012, May 4, 2012, July 19, 2012, September 19, 2012, and November 19, 2012, Dr. Salazar-Calderon again noted that Plaintiff was doing well on his medications, the results of physical and neurological examinations were unchanged, and Plaintiff's diabetic peripheral neuropathy was well controlled. The record does not include an opinion from Dr. Salazar-Calderon regarding Plaintiff's functionality or ability to do work-related activities.

### 4. State Agency Medical Consultant John B. Kurtin, M.D.

On April 17, 2012, Dr. Kurtin reviewed Plaintiff's function report, his medical records, and Dr. Ottney's medical opinion. Dr. Kurtin opined that Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. He further opined that Plaintiff was limited to occasionally climbing ramps/stairs, never climbing ladders/ropes/scaffolds, frequently stooping, occasionally kneeling, and occasionally crawling. Dr. Kurtin stated that his conclusions were based on evidence of right knee pain status post-surgery.

Dr. Kurtin provided additional explanation for his opinion. He explained that Plaintiff alleged right knee injury and diabetes and that he cannot walk, but his treating orthopedic surgeon had difficulty reconciling Plaintiff's subjective pain with no obvious arthritic changes. Dr. Kurtin also noted that Plaintiff had been observed by an investigator for the Phoenix Cooperative Disability Investigations Unit walking without difficulty and without an assistive device, standing up from a sitting position, bending over numerous times, and hosing down the driveway and plants.

### 5. The ALJ's Hearing Decision

Plaintiff contends the ALJ erred by giving little weight to Dr. Ottney's opinion that Plaintiff is limited to standing and/or walking for four hours out of an eight-hour workday. The ALJ identified the limitations opined by Dr. Ottney and gave significant weight to most of the opinion. The ALJ gave little weight to Dr. Ottney's assessment that

Plaintiff was limited to standing and/or walking for four hours out of an eight-hour workday because the substantial evidence of record did not support it. The ALJ noted that Plaintiff has minimal changes in the lumbar spine that would interfere with his ability to stand and/or walk and his knee pain was expected to improve with arthroscopy. The ALJ cited evidence that Plaintiff's diabetic peripheral neuropathy was well controlled although it caused pain and that Plaintiff had been observed moving around his front yard with no apparent signs of physical impairment. The ALJ also found that Plaintiff's analgesic medication history was inconsistent with allegations of severe pain. Thus, the ALJ gave specific and legitimate reasons for rejecting Dr. Ottney's opinion regarding the standing and/or walking limitation.

Plaintiff also contends the ALJ erred by giving significant weight to Dr. Kurtin's opinion that Plaintiff can stand and/or walk about six hours in an eight-hour workday. The ALJ found that Dr. Kurtin's opinion was well supported by the medical evidence, including Plaintiff's medical history, clinical and objective signs and findings, and treatment notes. The ALJ also found Dr. Kurtin's opinion was consistent with other substantial evidence of record. It was not legal error to give significant weight to a non-examining physician's opinion that was consistent with independent clinical findings and other evidence in the record where the physician provided supporting explanations for his opinion. The ALJ provided clear and convincing reasons for giving greater weight to Dr. Kurtin's opinion than to Dr. Ottney's opinion regarding the length of time that Plaintiff can stand and/or walk in an eight-hour day.

### B. The ALJ Did Not Err by Misinterpreting the Evidence.

Plaintiff contends the ALJ must have misinterpreted the evidence regarding Plaintiff's lower extremity numbness and pain because the ALJ found that Dr. Ottney's opinion that Plaintiff is limited to standing and/or walking for four hours out of an eight-hour workday was not supported by substantial evidence. Plaintiff identifies four items

in the record that he contends are substantial evidence in support of Dr. Ottney's limitation on standing and/or walking.

First, Plaintiff cites Dr. Salazar-Calderon's June 28, 2011 treatment note as showing "an early indication of lower extremity numbness and pain," even though he alleges he was disabled as of April 1, 2011. Dr. Salazar-Calderon conducted a complete sensory exam and found only decreased vibration sensation in Plaintiff's toes and decreased pinprick sensation in stocking distribution (*i.e.*, feet and ankles). Based on Plaintiff's subjective complaints of painful feet and numbness, Dr. Salazar-Calderon stated his examination was "suggestive of diabetic sensory peripheral neuropathy" and therefore he planned to conduct nerve conduction velocity tests. However, Dr. Salazar-Calderon stated that the numbness in Plaintiff's left big toe was probably caused by wearing tight shoes. Dr. Salazar-Calderon observed that Plaintiff "favored" his right leg when walking, but did not report that Plaintiff was unable to walk or stand for any length of time.

Second, Plaintiff cites the September 12, 2011 results of nerve conduction velocity testing, which were "suggestive of a mild left common peroneal demyelinating motor neuropathy and a mild left posterior tibial demyelinating motor neuropathy." The test results indicate only mild neuropathy in the left lower extremity and are not evidence of any functional impairment.

Third, Plaintiff cites Dr. Ottney's report to show that he complained of knee pain on August 9, 2011. He misrepresents the results of Dr. Ottney's examination as finding "several indications of lessened lower extremity capacity." She expressly found lower extremity muscle strength 5/5 bilaterally, balance and coordination normal, and stance normal. Lower extremity examination revealed "mild right crepitus and pain with full flexion of the right knee." Nothing suggests that Dr. Ottney found any indication of lessened lower extremity capacity.

Fourth, Plaintiff cites to the medical record documenting that he had surgery on October 25, 2012, for medical and lateral meniscus tears on his right knee. It is not

1  substantial evidence in support of Dr. Ottney's August 9, 2011 opinion limiting Plaintiff
2  to walking and/or standing no more than four hours in an eight-hour workday.
3        Thus, the ALJ did not err by misinterpreting evidence when he concluded that Dr.
4  Ottney's walk/stand limitation was not supported by substantial evidence of record.
5        IT IS THEREFORE ORDERED that the final decision of the Commissioner of
6  Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall
7  terminate this case.
8        Dated this 7th day of November, 2014.

                    */s/ Neil V. Wake*
                Neil V. Wake
              United States District Judge